UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FT. MYERS DIVISION

CASE NO.: 2:21-cv-0198-JLB-MRM

PROGRESSIVE EXPRESS INSURANCE COMPANY, AN OHIO CORPORATION,

Plaintiff,

v.

ISLAMARTI LLC, A FLORIDA LIMITED LIABILITY COMPANY, ALBERTO DANIEL HERRERA MARTINEZ, ISLARY MARTINEZ, TATE TRANSPORT CORPORATION, A FLORIDA CORPORATION, DENNIS NIENOW, AND RENEE NIENOW

Defendants. /

**PLAINTIFF'S MOTION FOR FINAL SUMMARY JUDGMENT/ MOTION FOR DEFAULT JUDGMENT AND SUPPORTING MEMORANDUM OF LAW**

Plaintiff, PROGRESSIVE EXPRESS INSURANCE COMPANY ("PROGRESSIVE") moves this Court, pursuant to Fed. R. Civ. P. 56(a) and 55(b), for a Final Summary Judgment and asserts that there are no disputed issues of material fact, and that PROGRESSIVE is entitled to a judgment as a matter of law. Specifically, PROGRESSIVE requests a Final Summary Judgment and a Default Judgment determining that the policy of insurance issued by PROGRESSIVE to Defendant, ISLAMARTI LLC ("ISLAMARTI"), does not provide bodily injury or

property damage liability coverage to ISLAMARTI, or to Defendants ALBERTO DANIEL HERRERA MARTINEZ ("ALBERTO"), ISLARY MARTINEZ ("ISLARY"), TATE TRANSPORT CORPORATION ("TATE TRANSPORT"), DENNIS NIENOW ("DENNIS") or RENEE NIENOW ("RENEE"), as a result of the motor vehicle/ bicycle accident that occurred on March 25, 2020.

## INTRODUCTION

This is an insurance coverage case wherein the policy of insurance issued by PROGRESSIVE to ISLAMARTI, by its terms, provides only non-trucking liability. On the day of the accident, Defendant, ALBERTO, was operating a dump truck owned by ISLAMARTI, for business purposes on behalf of ISLAMARTI for the benefit of Defendant, TATE TRANSPORT. Specifically, ALBERTO was utilizing a 2004 Peterbilt dump truck owned by ISLAMARTI to deliver building materials for TATE TRANSPORT to a construction site known as Siena Lakes, located at 2521 Orange Blossom Drive, Naples, Florida.

The Progressive policy provides in pertinent part:

> 15. **Trucking Use**
>
> Coverage under this Part I, including **our** duty to defend, does not apply to an **insured auto** or any attached **trailer** while operated, maintained, or used:
>
> a. To carry property or while such property is being loaded or unloaded from the **insured auto** or an attached **trailer**; or
> b. In any business or for any business purpose.

Plaintiffs contend that ALBERTO struck him while driving a dump truck but did not identify the specific truck. Defendant, ALBERTO, disputes that he or any of the vehicles owned by ISLAMARTI struck the Plaintiff. However, for the purposes of this Motion, that dispute is irrelevant because all three vehicles on the policy were being used on the incident to carry materials to the Siena Lakes site. Progressive asserts that because of the foregoing exclusion, its policy does not provide coverage for the various bodily injury claims asserted.

Defaults have been entered against ALBERTO [DE 69], ISLAMARTI [DE 70] and ISLARY [DE 71].

## STATEMENT OF MATERIAL FACTS

1. PROGRESSIVE issued a Commercial Automobile Insurance Policy, under Policy No. 00972225-0, to ISLAMARTI, for the policy period from July 31, 2019 to July 31, 2020 (the "Commercial Auto Policy") (Causey Aff. ¶ 3.).

2. The Commercial Auto Policy was in full force and effect on March 25, 2020 (Causey Aff. ¶ 3.).

3. The Commercial Auto Policy provided Non-Trucking Liability coverage and insured three vehicles, a 2006 Volvo Vhd, a 2006 Peterbilt Vhd, and a 2004 Peterbilt 379 (Causey Aff. Ex. A).

4. The Commercial Auto Policy an exclusion, stating that Bodily Injury Coverage, including the duty to defend, did not apply when the covered autos were

being used "to carry property…or in any business or for any business purpose." (Causey Aff. at 53-54).

5. ISLAMARTI had a business relationship with TATE TRANSPORT where ISLAMARTI would provide drivers and trucks to TATE TRANSPORT to transport dirt to sites selected by TATE TRANSPORT, utilizing a specific route Tate directed (Islary Martinez Dep. 15:5–7, 15:17–20) (Alberto Herrera Martinez Dep. 28:21–23).

6. In exchange for transporting dirt, TATE TRANSPORT would issue weekly payments to ALBERTO, as an owner of the ISLAMARTI company, for the loads that were transported the week prior (Islary Martinez Dep. 15:21–25, 16:6–17, 17:15–17).

7. On March 25, 2020, all three trucks listed on the Progressive insurance policy were hauling fill sand to and from the Siena Lakes construction project, including the 2004 Peterbilt being driven by ALBERTO. (*Id.* at 25:12–17) (Alberto Herrera Martinez Dep. 8:13–19, 9:25–10:2).

8. On March 25, 2020, DENNIS was operating a bicycle when he was struck by a dump truck (Dennis Nienow Dep. 27:18, 30:11).

9. DENNIS alleges that the dump truck that struck him was being driven by ALBERTO [DE 49-2 at 6-7).

## MEMORANDUM OF LAW

### A. SUMMARY JUDGMENT STANDARD

In *In re: Amendments to Fla. Rule of Civil Proc. 1.510.*, 317 So. 3d 72 (Fla. 2021), the Florida Supreme Court adopted the federal summary judgment standard effective May 1, 2021. Specifically, the court stated that:

> New rule 1.510 takes effect on May 1, 2021. This means that the new rule must govern the adjudication of any summary judgment motion decided on or after that date, including in pending cases.

In *In re Amendments to Fla. Rule of Civil Proc. 1.510.*, 309 So. 3d 192 (Fla. 2020), the court summarized the new summary judgment standard as follows:

> Since this Court's decision in Holl v. Talcott, 191 So. 2d 40 (Fla. 1966), Florida courts have required the moving party conclusively "to disprove the nonmovant's theory of the case in order to eliminate any issue of fact." Logue & Soto, supra, at 24. By contrast, the Supreme Court has held that there is "no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials negating the opponent's claim.". Rather, the Supreme Court explained that "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case.". Upon motion and provided there has been an "adequate time for discovery," the Supreme Court has held that summary judgment should be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.". In other words, under the federal summary judgment standard, "the extent of the moving party's burden varies depending on who bears the burden of persuasion at trial."
> …
> …By contrast, the Supreme Court has described the federal test as whether "the evidence is such that a reasonable jury could return a verdict for the nonmoving party. If the evidence is merely colorable, or

> is not significantly probative, summary judgment may be granted. A party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts.". More recently, the Supreme Court explained that when opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." (internal citations and quotations omitted)

## B. INTERPRETATION OF EXCLUSIONARY CLAUSES IN INSURANCE CONTRACTS

In *Deni Assocs. v. State Farm Fire & Cas. Ins. Co.*, 711 So. 2d 1135, 1138 (Fla. 1998), the Florida Supreme Court stated:

> [E]xclusionary provisions which are ambiguous or otherwise susceptible to more than one meaning must be construed in favor of the insured, since it is the insurer who usually drafts the policy. However, only when a genuine inconsistency, uncertainty, or ambiguity in meaning remains after resort to the ordinary rules of construction is the rule apposite. It does not allow courts to rewrite contracts, add meaning that is not present, or otherwise reach results contrary to the intentions of the parties.

In *Westmoreland v. Lumbermens Mut. Cas. Co.*, 704 So. 2d 176, 179-180 (Fla. 4th DCA 1997), the court stated in the context of exclusionary clauses:

> Thus, the current Florida rule is that strict construction is required of exclusionary clauses in insurance contracts only in the sense that the insurer is required to make clear precisely what is excluded from coverage. If the insurer fails in the duty of clarity by drafting an exclusion that is capable of being fairly and read both for and against coverage, the exclusionary clause will be construed in favor of coverage. If the insurer makes clear that it has excluded a particular coverage, however, the court is obliged to enforce the contract as written."

***

> "Strict construction does not mean that a court must always find coverage. Strict construction does not mean . . . that clear words may be tortured into uncertainty so that new meanings can be added. Where the insurer has defined a term used in the policy in clear, simple, non-technical language, as is the case with pollution in these policies, strict construction does not mean that judges are empowered to give the defined term a different meaning deemed more socially responsible or desirable to the insured."

However, as to undefined terms, the Supreme Court, in *Gov't Emples. Ins. Co. v. Macedo*, 228 So. 3d 1111, 1113 (Fla. 2017), stated:

> When a term in an insurance policy is undefined, it should be given its plain and ordinary meaning, and courts may look to legal and non-legal dictionary definitions to determine such a meaning.

*See also* *Pompano Motor Co. v. Chrysler Ins. Co.*, 875 So. 2d 754, 757 (Fla. 4th DCA 2004) ("When a term has not been defined by policy, its common definition should prevail.")

**C. ARGUMENT**

**1. The Trucking Use Exclusion Excludes Coverage to ISLAMARTI, ALBERTO, ISLARY AND TATE TRANSPORT**

By its terms, the Commercial Auto Policy provided non-trucking coverage to ISLAMARTI. The policy insured three trucks including the one being driven by ALBERTO. On the day of the Accident, all three of the trucks insured under the Commercial Auto Policy were being used in a commercial context to carry dirt to TATE TRANSPORT'S Sienna Lakes construction site. The Commercial Auto

Policy, which was described on the Declarations Page as a non-trucking policy, included an exclusion that stated:

> 15. **Trucking Use**
> Coverage under this Part I, including **our** duty to defend, does not apply to an
> **insured auto** or any attached **trailer** while operated, maintained, or used:
> a. To carry property or while such property is being loaded or unloaded from the **insured auto** or an attached **trailer**; or
> b. In any business or for any business purpose.

Progressive contends that liability coverage does not apply, because the 2004 Peterbilt 379, VIN 1NP5LBEX84D822650, as well as the other two vehicles on the policy: 2006 Volvo Vhd, VIN: 4 V5KC9GH46N412238, and 2006 Volvo Vhd VIN: 4V5KC9GG06N408680 were all being operated "in any business or for any business purpose."

Non-trucking insurance is often described as "bobtail insurance." In *Empire Fire & Marine Ins. Co. v. Ins. Co.*, 638 So. 2d 102, 103 (Fla. 3d DCA 1994), the court stated as follows:

> "Bob-tail/deadhead insurance is a term generally used to describe 'non-trucking use insurance.' It is intended to cover the insured when the vehicle is not under load, when it is being serviced, or when it is being used for some other non-revenue purpose."

Although no Florida court has construed the exact phrase "in any business or for any business purpose" in the context of an insurance exclusion, federal courts applying Florida law and federal courts from other states have. In *Progressive*

*Express Ins. Co. v. Candelas*, 2020 U.S. Dist. LEXIS 81878, 2020 WL 6049374 (M.D. Fla. Apr. 16, 2020), adopted at 2020 U.S. Dist. LEXIS 81879, 2020 WL 6049317 (M.D. Fla. May 5, 2020), the United States District Court for the Middle District of Florida had before it the identical exclusion. In that case, the insured was driving a Peterbilt truck which was towing a trailer, under load (water), when it struck a tree. In terms of the relevant exclusion the court stated:

> Similarly, the Trucking or Business Use Exclusion in this action excludes coverage when the insured auto or any attached trailer is operated, maintained, or used (1) to carry property or while such property is being loaded or unloaded from the insured auto or an attached trailer or (2) in any business or for any business purpose. As in [*Great American Insurance Company v.*] *Sanchuk* [2012 U.S. Dist. LEXIS 154003, 2012 WL 5306354, at *6 (M.D. Fla. Oct. 26, 2012)], the provision in the Commercial Auto Policy in this instance is unambiguous and precludes coverage for the Accident, as, at the time of the Accident, the Peterbilt truck towed a trailer owned by Delaware Valley Floral Group, Inc. d/b/a/ Flower Transfer Logistics, which was loaded with water… (emphasis added)

*See also* *Progressive Paloverde Ins. Co. v. Estate of Estate of Jenkins*, 2021 U.S. Dist. LEXIS 30107, 2021 WL 638119 (E.D. La. Feb. 18, 2021) *United Fin. Cas. Co. v. Spirit of the Lion, LLC,* 2020 U.S. Dist. LEXIS 204631, MO:19-CV-007-DC (W.D. Tex. August 25, 2020) and *Progressive Mt. Ins. Co. v. Williams*, 2019 U.S. Dist. LEXIS 232890, 2019 WL 9828533 (N.D. Ga. July 26, 2019). Each of these cases construes the exact exclusion at issue here in favor of the insurer.

All three trucks on this policy were being used for a revenue purpose. Since the terms "business" and "business purpose" are not defined in the policy, it is

appropriate to look at dictionary definitions. Merriam-Webster's Online Dictionary defines "business" as "the activity of making, buying, or selling goods or providing services in exchange for money." The word "business" is defined by Merriam-Webster's Collegiate Dictionary 167 (11th ed. 2006) as "a usual commercial or mercantile activity engaged in as a means of livelihood, a commercial or sometimes an industrial enterprise, or dealings or transactions especially of an economic nature. The American Heritage College Dictionary defines "business" as "the occupation, work, or trade in which a person is engaged." THE LAW.com defines "business purpose" as "an act performed for the purpose of carrying out a business as opposed to personal or non-business reason." Applying these common definitions, it is undisputed that the relationship between ISLAMARTI, ALBERTO, ISLARY, and TATE TRANSPORT was for a business purpose. Because the relationship between ISLAMARTI, ALBERTO, ISLARY, and TATE TRANSPORT was for a business purpose, and because the insured trucks were all actively engaged in furthering the business relationship at the time by hauling construction sand, the Trucking Use exclusion under the policy applies, and there is no coverage for the claims being made against ISLAMARTI, ALBERTO, ISLARY, and TATE TRANSPORT by DENNIS or RENEE arising out of the March 25, 2020 automobile/bicycle collision.

**D. DEFAULT JUDGMENT**

In *Endurance Am. Specialty Ins. Co. v. Joy Grocery, Inc.*, No. 6:15-cv-1906-Orl-31DCI, 2017 U.S. Dist. LEXIS 214185 (M.D. Fla. Dec. 15, 2017), confirmed and adopted, *Endurance Am. Specialty Ins. Co. v. Joy Grocery, Inc.*, No. 6:15-cv-1906-Orl-31DCI, 2018 U.S. Dist. LEXIS 1945 (M.D. Fla. Jan. 5, 2018), the court stated as follows:

> **THE MOTION FOR DEFAULT JUDGMENT**
>
> **A. Standard of Review — Default Judgment**
>
> The Federal Rules of Civil Procedure establish a two-step process for obtaining default judgment. First, when a party against whom a judgment for affirmative relief is sought fails to plead or otherwise defend as provided by the Federal Rules of Civil Procedure, and that fact is made to appear by affidavit or otherwise, the Clerk enters default. Fed. R. Civ. P. 55(a). Second, after obtaining clerk's default, the plaintiff must move for default judgment. Fed. R. Civ. P. 55(b). Before entering default judgment, the court must ensure that it has jurisdiction over the claims and parties, and that the well-pled factual allegations of the complaint, which are assumed to be true, adequately state a claim for which relief may be granted. *See Nishimatsu Constr. Co. v. Houston Nat'l Bank,* 515 F.2d 1200, 1206 (5th Cir. 1975).
>
> A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This standard does not require detailed factual allegations, but does demand "more than an unadorned, the defendant- unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). Thus, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting *Twombly*, 550 U.S. at 570). To state a plausible claim for relief, a plaintiff must go beyond merely pleading the "sheer possibility" of

> unlawful activity by a defendant and offer "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly,* 550 U.S. at 556). If a plaintiff fails to meet this pleading standard, then the plaintiff will not be entitled to default judgment. If the plaintiff is entitled to default judgment, then the court must consider whether the plaintiff is entitled to the relief requested in their motion for default judgment.

The Complaint filed herein and service of process on ALBERTO, ISLAMARTI and ISLARY are in full compliance with the foregoing requirements. As in *Progressive Am. Ins. Co. v. Steele*, 2014 U.S. Dist. LEXIS 55664, 2017 WL 1612941 (M.D. Fla. Apr. 22, 2014), it is appropriate for this court to now enter a Default Judgment against ALBERTO, ISLAMARTI and ISLARY. *See also Progressive Select Ins. Co. v. Rafferty*, 2021 U.S. Dist. LEXIS 19223, 2011 WL 606243 (M.D. Fla. Jan. 29, 2021), adopted 2021 U.S. Dist. LEXIS 28291, 2021 WL 598249 (M.D. Fla. Feb. 16, 2021).

**E. CONCLUSION**

For the foregoing reasons, PROGRESSIVE requests a Final Summary Judgment against TATE TRANSPORT, DENNIS and RENEE, and a Default Judgment against ALBERTO, ISLAMARTI and ISLARY.

**CERTIFICATE OF SERVICE**

I hereby certify that on June 15, 2022, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified

on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notice of Electronic Filing.

Respectfully submitted,

/s/ *Stuart J. Freeman*

Stuart J. Freeman, Esquire
Florida Bar No. 237493
FREEMAN, GOLDIS & CASH, P.A.
Post Office Box 12349
2553 First Avenue North
St. Petersburg, Florida 33733-2349
Tel: 727-327-2258
Fax: 727-321-2497
stuart.freeman@fgclawfirm.com
crystal.siegel@fgclawfirm.com

*Attorneys for Plaintiff, Progressive Express Insurance Company*

**SERVICE LIST**

CASE NO.: 2:21-cv-0198-JLB-MRM

Michael G. Heilmann, Esq.
Florida Bar No. 353957
23394 Goddard Road
Taylor, MI 48180
Tel: 734-307-3800
mgh@dialaw.net
cassie@dialaw.net

*Attorneys for Defendants, Dennis Nienow and Renee Nienow*

Jeffrey A. Blaker, Esq.
Florida Bar No. 443913
CONROY SIMBERG
1801 Centrepark Dr E Ste 200
West Palm Beach, FL 33401-7427
Tel: 561-697-8088
Fax: 561-597-8664
eservicewpb@conroysimberg.com
jblaker@conroysimberg.com

*Attorneys for Defendant, Tate Transport Corp.*

**BY US MAIL AND EMAIL**

Islamarti LLC
Alberto Daniel Herrera Martinez
Islary Martinez
1885 Desoto Blvd N,
Naples, FL 34120
Islarymg1982@gmail.com