UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

PROGRESSIVE EXPRESS INSURANCE COMPANY, an Ohio Corporation,

    Plaintiff,

v.   Case No: 2:21-cv-198-JES-KCD

TATE TRANSPORT CORPORATION, a Florida Corporation, RENEE NIENOW, ISLARY MARTINEZ, ISLAMARTI LLC, a Florida Limited Liability Company, DENNIS NIENOW, and ALBERTO DANIEL HERRERA MARTINEZ,

    Defendants.

---

## OPINION AND ORDER

This matter comes before the Court on the plaintiff's Motion for Final Summary Judgment/Motion for Default Judgment (Doc. #72). Defendant Tate Transport Corporation (Tate Transport) filed a Response (Doc. #80), and Plaintiff filed a Reply (Doc. #81). Defendants Dennis Nienow and Renee Nienow have not responded to the motion, and the remaining defendants are in default.

Progressive Express Insurance Company (Progressive or plaintiff) filed its Amended Complaint for Declaratory Judgment (Doc. #49) seeking a declaration that it did not owe a duty to defend or a duty to indemnify in a particular motor vehicle versus bicycle accident case filed in state court. Defendant Tate Transport filed an Answer and Affirmative Defenses (Doc. #51);

defendants Islamarti, LLC, Alberto Daniel Herrera Martinez (Alberto Martinez), and Islary Martinez filed Answers and Affirmative Defenses (Doc. #52); and defendants Dennis Nienow and Renee Nienow filed an Answer (Doc. #53). Ultimately, a Clerk's Default was issued as to Alberto Martinez, Islamarti LLC, and Islary Martinez. (Docs. ## 69-71.)

Progressive now seeks summary judgment and/or default judgment against all defendants. Progressive argues that the Commercial Auto Policy it issued does not provide bodily injury or property damage liability coverage to any of the defendants in connection with the March 25, 2020, accident. Progressive maintains that the Policy provides only non-trucking liability coverage and contains a trucking-use exclusion. Progressive asserts the undisputed facts establish that all three insured vehicles were being utilized to deliver building materials (sand) to a construction site, and therefore fall squarely within the terms of the exclusion. Therefore, Progressive argues, it has no duty to defend or indemnify.

I.

Summary judgment is appropriate only when the Court is satisfied that "there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to

2

find for the nonmoving party." Baby Buddies, Inc. v. Toys "R" Us, Inc., 611 F.3d 1308, 1314 (11th Cir. 2010). A fact is "material" if it may affect the outcome of the suit under governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "A court must decide 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Hickson Corp. v. N. Crossarm Co., Inc., 357 F.3d 1256, 1260 (11th Cir. 2004) (quoting Anderson, 477 U.S. at 251).

In ruling on a motion for summary judgment, the Court views all evidence and draws all reasonable inferences in favor of the non-moving party. Scott v. Harris, 550 U.S. 372, 380 (2007); Tana v. Dantanna's, 611 F.3d 767, 772 (11th Cir. 2010). However, "if reasonable minds might differ on the inferences arising from undisputed facts, then the court should deny summary judgment." St. Charles Foods, Inc. v. America's Favorite Chicken Co., 198 F.3d 815, 819 (11th Cir. 1999) (quoting Warrior Tombigbee Transp. Co. v. M/V Nan Fung, 695 F.2d 1294, 1296-97 (11th Cir. 1983) (finding summary judgment "may be inappropriate even where the parties agree on the basic facts, but disagree about the factual inferences that should be drawn from these facts")). "If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant

summary judgment." Allen v. Bd. of Pub. Educ., 495 F.3d 1306, 1315 (11th Cir. 2007).

"The defendant, by his default, admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established." Nishimatsu Constr. Co. v. Houston Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975) (citations omitted). "While a defaulted defendant is deemed to admit the plaintiff's well-pleaded allegations of fact, he is not held to admit facts that are not well-pleaded or to admit conclusions of law." Surtain v. Hamlin Terrace Found., 789 F.3d 1239, 1245 (11th Cir. 2015) (quotation marks and citation omitted). "The mere entry of a default by the clerk does not in itself warrant the entry of default by the Court. Rather the Court must find that there is sufficient basis in the pleadings for the judgment to be entered." GMAC Commercial Mortg. Corp. v. Maitland Hotel Assocs., Ltd., 218 F. Supp. 2d 1355, 1359 (M.D. Fla. 2002) (citing Nishimatsu, 515 F.2d at 1206).

## II.

Progressive issued a Commercial Automobile Insurance Policy (the Policy) (Doc. #73-1) to Islamarti, LLC for the policy period July 31, 2019, to July 31, 2020. The "Coverage Summary" for the Policy states that the Policy includes provisions for "Non-Trucking Liability to Others." (Doc. #73-1, p. 4.) Part I of the

4

Policy, the "Insuring Agreement – Liability To Others" portion, committed Progressive to "pay damages, other than punitive or exemplary damages, for **bodily injury**, **property damage** . . . for which an **insured** becomes legally responsible because of an **accident** arising out of its ownership, maintenance or use of that **insured** auto." (Id. at 22) (bold in the original, indicating terms defined in the Policy). An Endorsement to the Policy provides that the Policy was modified to add the following exclusion:

> 15. **Trucking Use**
>
> Coverage under this Part I, including **our** duty to defend, does not apply to an **insured auto** or any attached **trailer** while operated, maintained, or used:
>
> a. To carry property or while such property is being loaded and unloaded from the **insured auto** or an attached **trailer**; or
>
> b. In any business or for any business purpose.

(Id. at 53-54.) The Policy provides this coverage for three dump trucks – a 2006 Volvo Vhd, a 2006 Volvo Vhd, and a 2004 Peterbilt 379. (Id. at 5.) Tate Transport (and others) was an additional named insured on the Policy. (Id. at 7.)

During the term of the Policy, Islamarti had a business relationship with Tate Transport. Islamarti would provide drivers and trucks to Tate Transport to carry dirt to sites selected by Tate Transport along routes selected by Tate Transport. Tate Transport would make weekly payments to Islamarti for the loads transported during the prior week. On March 25, 2020, the Policy

5

was in full force and effect, and all three insured trucks were hauling fill sand from the Youngquist Brothers Mine to Tate Transport's Siena Lakes construction project.

On March 25, 2020, 74-year-old Dennis Nienow (Mr. Nienow) went for a bicycle ride and was struck by a dump truck, causing very serious bodily injury. The police accident report described the events, which occurred at approximately 7:19 a.m., as follows:

> [A bicycle] was traveling westbound on the sidewalk on Orange Blossom Drive approaching the intersection of Siena Lakes drive. [A vehicle] was traveling southbound on Siena Lakes Drive approaching the intersection of Orange Blossom Drive. As [the bicycle] entered the intersection, [the vehicle] proceeded to turn left onto Orange Blossom Drive. The front right of [the vehicle] struck [the bicycle] causing the rider to become separate from the bicycle. The rider and the bicycle came to final rest in the westbound lane on Orange Blossom Drive. [Vehicle] continued eastbound on Orange Blossom Drive.

(Doc. #80-1, p. 2.) No vehicle owner was identified, and the accident was labelled a hit and run. (Id.) Mr. Nienow did not see the driver of the dump truck, did not recognize any marks on the dump truck or any writing on it, and does not recall what part of the truck hit him.

Mr. Nienow and his wife filed a First Amended Complaint (Doc. #49-2) in Lee County Circuit Court against Tate Transport, Alberto Daniel Herrera Martinez (Alberto Martinez), Islary Martinez, and Islamarti, LLC seeking in excess of one million dollars. The Nienows claim that Alberto Martinez "mowed down" Mr. Nienow on

6

March 25, 2020, while driving a dump truck owned by Islamarti and acting as Tate Transport's agent in connection with pick-up and deliveries of sand for the Siena Lakes construction site.

### III.

Progressive filed suit under the federal Declaratory Judgment Act, 28 U.S.C. § 2201, seeking to take advantage of the valuable role a declaratory judgment plays in clarifying an insurance companies' liability quickly and directly. James River Ins. Co. v. Rich Bon Corp., 34 F.4th 1054, 1058 (11th Cir. 2022). Progressive's Amended Complaint For Declaratory Judgment asserts that if the dump truck involved in the accident was one of the three trucks covered by the Policy, coverage is excluded by the "Trucking Use" exclusion because the truck "was being used to carry property or for was [sic] being used in the business of ISLAMARTI or was being used for a business purpose of ISLAMARTI." (Doc. #49, ¶ 22.)  As a result, the Amended Complaint asserts, Progressive has no duty to defend or indemnify. (Id. at ¶ 23.)

Progressive's summary judgment motion focuses on only one component of the Trucking Use exclusion.  Progressive assumes for purposes of the motion that one of the three insured dump trucks was the truck involved in the accident.  Nonetheless, Progressive argues that the Policy does not provide coverage because the truck was being used in a commercial context to carry dirt to Tate Transport's Sienna Lakes construction site, and thus was being

7

operated "in any business or for any business purpose" within the meaning of the Policy's "Trucking Use" exclusion. All three insured trucks would be subject to the same exclusion.

### A. Duty to Defend

#### (1) Florida Law Applies

Because federal jurisdiction in this case is premised on diversity of citizenship (Doc. #49, ¶ 2), the Court applies Florida's substantive law. Westchester Gen. Hosp., Inc. v. Evanston Ins. Co., 48 F.4th 1298, 1302 (11th Cir. 2022). All responding parties also rely on Florida law. (Doc. #72, P. 6; Doc. #80, p.4.)

#### (2) Florida Duty to Defend Principles

The Court starts with Progressive's duty to defend because "[u]nder Florida law, an insurer's duty to defend is separate and distinct from its duty to indemnify, and it is more extensive." Advanced Sys., Inc. v. Gotham Ins. Co., 272 So. 3d 523, 526–27 (Fla. 3d DCA 2019) (citation omitted). As the Eleventh Circuit has recently summarized:

> Under Florida law, "an insurer's duty to defend its insured against a legal action arises when the complaint alleges facts that fairly and potentially bring the suit within policy coverage." Jones v. Fla. Ins. Guar. Ass'n, 908 So. 2d 435, 442–43 (Fla. 2005). The duty to defend is a broad one, broader than the duty to indemnify, and "[t]he merits of the underlying suit are irrelevant." Mid-Continent Cas. Co. v. Royal Crane, LLC, 169 So. 3d 174, 181 (Fla. 4th DCA 2015). We determine whether an insurer has a duty to

> defend its insured based only on "the eight corners of the complaint and the policy," id. at 182, and only as the complaint's alleged facts are "fairly read," Fun Spree Vacations, Inc., 659 So. 2d at 421. The "facts" we consider in evaluating the duty to defend come solely from the complaint, regardless of the actual facts of the case and regardless of any later developed and contradictory factual record. Jones, 908 So. 2d at 442–43. "Any doubts regarding the duty to defend must be resolved in favor of the insured," id. at 443, and "where a complaint alleges facts that are partially within and partially outside the coverage of an insured's policy, the insurer is not only obligated to defend, but must defend that entire suit," Sunshine Birds & Supplies, Inc. v. U.S. Fid. & Guar. Co., 696 So. 2d 907, 910 (Fla. 3d DCA 1997). But of course, because the lawsuit must be for something covered by the insurance policy, "the insurer has no duty to defend" when "the pleadings show the applicability of a policy exclusion." State Farm Fire & Cas. Co. v. Tippett, 864 So. 2d 31, 35 (Fla. 4th DCA 2003).

Travelers Indem. Co. of Connecticut v. Richard Mckenzie & Sons, Inc., 10 F.4th 1255, 1261 (11th Cir. 2021). See also Westchester Gen. Hosp., Inc., 48 F.4th at 1302 ("However, an insurer does not need to defend an insured if a policy exclusion applies," citing Keen v. Fla. Sheriffs' Self-Ins. Fund, 962 So. 2d 1021, 1024 (4th Fla. DCA 2007)).

An insurance policy can, without creating a conflict or ambiguity, both provide coverage and exclude some things that might otherwise fall within that coverage. Cynergy, LLC v. First Am. Title Ins. Co., 706 F.3d 1321, 1327 (11th Cir. 2013). On the other hand, an insurance policy's coverage becomes illusory if it grants

9

coverage in one provision and completely takes it away in another provision.  Richard Mckenzie & Sons, Inc., 10 F.4th at 1265-66.

Because Progressive relies on an exclusion to deny coverage, "it has the burden of demonstrating that the allegations of the complaint are cast solely and entirely within the policy exclusion and are subject to no other reasonable interpretation."  Advanced Sys., Inc. v. Gotham Ins. Co., 272 So. 3d 523, 527 (Fla. 3d DCA 2019) (citation omitted).  The Court focuses on the specifics of the state court pleading and the Policy's terms of coverage and exclusion from coverage.  Richard Mckenzie & Sons, Inc., 10 F.4th at 1261.  If the state court pleadings show the applicability of a policy exclusion, Progressive has no duty to defend or indemnify. Id. at 1262.

**(3)   Application of Duty to Defend Principles**

As discussed earlier, Part I of the Policy committed Progressive to "pay damages, other than punitive or exemplary damages, for **bodily injury, property damage** . . . for which an **insured** becomes legally responsible because of an **accident** arising out of its ownership, maintenance or use of that **insured auto**." (Doc. #73-1, p. 22) (emphasis in original).  The "arising out of" language provides a broad coverage.  Richard Mckenzie & Sons, Inc., 10 F.4th at 1263.  The Trucking Use Endorsement to the Policy excluded some of this coverage under certain circumstances:

10

> 15. **Trucking Use**
>
> Coverage under this Part I, including **our** duty to defend, does not apply to an **insured auto** or any attached **trailer** while operated, maintained, or used:
>
> a. To carry property or while such property is being loaded and unloaded from the **insured auto** or an attached **trailer**; or
>
> b. In any business or for any business purpose.

(Id. at 53-54) (emphasis in original).

Progressive's summary judgment motion only relies upon the "in any business or for any business purpose" portion of the Trucking Use Exclusion. (Doc. #72, p. 8.) Thus, for the exclusion to apply in this case, the state court pleadings must show that all claims involve an accident which occurred while an "insured auto" was "operated, maintained, or used" "in any business or for any business purpose."

The state court Amended Complaint (Doc. #49-2) alleges that Tate Transport is a trucking company whose drivers perform ultra-hazardous activities, including using dump trucks to deliver sand from Youngquist Brothers Mine to a construction site. (Id. at ¶ 4.) On or about February 4, 2020, Tate Transport entered into a profit-making agreement with South Florida Excavation to deliver white fill sand from Youngquist Brothers Rock Mine and other mines to a construction project at Siena Lakes. (Id. at ¶¶ 12-13.) Alberto Martinez was one of the dump truck drivers in Tate Transport business operations and is alleged to be the driver who

hit Mr. Nienow on March 25, 2020. (Id. at ¶¶ 15-19.) The Amended Complaint sets forth five counts: (1) Negligence by Tate Transportation in the operation of the dump truck on March 25, 2020 (Count I); (2) breach of duty on March 25, 2020, as owner of a dangerous instrumentality (Count II); (3) negligent selection of sub-contractors on and before March 25, 2020 (Count III); (4) Strict Liability against Islamarti for the accident on March 25, 2020, as owner of the dump truck (Count IV); and (5) active negligence against Tate Transport as a broker by breaching various duties on and before March 25, 2020 (Count V).

There is no dispute that all three of the dump trucks were "insured autos" within the meaning of the Policy. The state court Amended Complaint alleges facts showing that the dump truck was being "operated, maintained, or used" within the meaning of the Policy's Trucking Use exclusion. Finally, the state court Amended Complaint alleges facts showing that the truck was being operated, maintained or used "in any business or for any business purpose." Indeed, Tate Transport agrees that on March 25, 2020, all three trucks listed on the Policy "were involved in hauling fill sand to and from the Siena Lakes construction project." (Doc. #80, p. 2, ¶ 1.)

Tate Transport suggests that if one of the three vehicles was involved in the accident it would not have been under load, since it was leaving the construction site. (Id. at p. 4.) While this

12

may be true, the summary judgment motion does not rely on "loaded and unloaded" portion of the Trucking Use Exclusion.

Additionally, Tate Transport argues that

> [t]he minimal evidence that exists at this time shows that the accident occurred at a time when the subject trucks were not being operated, maintained, or used in business - they were either traveling without any load at the construction site or somewhere else. The evidence simply does not show, to the extent required for summary judgment, what the trucks were actually doing at the time of the accident. The drivers could have been taking a personal break. The trucks could have been turned off waiting for someone at the quarry to do something. Many possibilities exist that would bring this accident within Progressive's coverage, i.e., where the subject exclusion would be inapplicable factually.

(Doc. #80, p. 5.)  But, as discussed earlier, the Court is limited to the allegations in the state court Amended Complaint to determine the duty to defend.  Those factual allegations are sufficient to establish what the truck was doing at the time of the accident, and by any reasonable definition of the undefined terms showed that the truck was being operated, maintained or used "in any business" or "for any business purpose."

The difficulty with Progressive's duty to defend position is not that allegations of the state court Amended Complaint do not fall within the terms of the Trucking Use exclusion. Rather, there is a duty to defend in this case because the state court Amended Complaint is not confined to the March 25, 2020 accident. Count III and V of the Amended Complaint include negligent conduct

allegedly occurring before the March 25, 2020 accident, which falls within the broad scope of coverage and is not within the terms of the Trucking Use exclusion.  Thus, Count III alleges that Tate Transport is liable for negligent selection of sub-contractors for breaching several its duties prior to March 25, 2020.  Count V alleges that Tate Transport is liable for active negligence as a broker, breaching several duties prior to March 25, 2020. Both claims seek damages for bodily injury because of an accident arising out of its ownership, maintenance or use of an insured vehicle, but are not limited to the circumstances required by the Trucking Use Exclusion.

An insurer's duty to defend an insured in a legal action under Florida law "arises when the complaint alleges facts that fairly and potentially bring the suit within policy coverage." Jones v. Fla. Ins. Guar. Ass'n, 908 So. 2d 435, 442-43 (Fla. 2005). Even if the allegations in the complaint are meritless, the duty to defend nonetheless arises.  All doubts about whether the duty to defend applies are resolved in favor of the insured. Id. at 443.  "If an examination of the allegations of the complaint leaves any doubt regarding the insurer's duty to defend, the issue is resolved in favor of the insured." Laws. Title Ins. Corp. v. JDC (Am.) Corp., 52 F.3d 1575, 1580-81 (11th Cir. 1995).  The allegations in the state court Amended Complaint in Counts III and V satisfy this

requirement, and therefore Progressive is not entitled to summary judgment on its duty to defend position.

### B. Duty to indemnify

"While the duty to defend is broad and based on the allegations in the complaint, the duty to indemnify is determined by the facts adduced at trial or during discovery." Pa. Lumbermens Mut. Ins. Co. v. Ind. Lumbermens Mut. Ins. Co., 43 So. 3d 182, 188 (Fla. 4th DCA 2010). See also Pub. Risk Mgmt. of Florida v. Munich Reinsurance Am., Inc., 38 F.4th 1298, 1306 (11th Cir. 2022) (quoting Pa. Lumbermens).

Therefore, unlike the duty to defend, the trial court must look beyond the allegations in the underlying complaint to decide whether an insurer has a duty to indemnify. The duty to indemnify arguably may not become fully ripened until the merits of the underlying litigation are resolved. Aetna Ins. Co. v. Borrell-Bigby Elec. Co., 541 So.2d 139, 141 (Fla. 2d DCA 1989).

As of the filing of the summary judgment motion, the state court case was still ongoing. The material facts are not undisputed, and therefore summary judgment on the duty to indemnify is not appropriate. This portion of the motion will be denied.

### C. Default judgment

Rule 55 requires that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the

15

clerk must enter the party's default." Fed. R. Civ. P. 55(a). Nevertheless, there is a "strong policy of determining cases on their merits" and, therefore, "default judgments are generally disfavored." Surtain v. Hamlin Terrace Found., 789 F.3d 1239, 1244-45 (11th Cir. 2015) (quoting In re Worldwide Web Sys., Inc., 328 F.3d 1291, 1295 (11th Cir. 2003)).  Here, the defaulted defendants turn out to be in the same essential situation as the other defendants.  Progressive's pleadings incorporate the state court Amended Complaint, Progressive has a duty to defend, and there are material disputed facts as to the duty to indemnify.  Progressive's motion for default judgment is denied.

Accordingly, it is now

**ORDERED:**

Plaintiff's Motion for Final Summary Judgment/Motion for Default Judgment (Doc. #72) is **DENIED**.

**DONE AND ORDERED** at Fort Myers, Florida, this   16th   day of November 2022.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies: Counsel of record